**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ELBIT SYSTEMS LAND AND C4I LTD. and ELBIT SYSTEMS OF AMERICA, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>HUGHES NETWORK SYSTEMS, LLC, BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC, BLUETIDE COMMUNICATIONS, INC., and COUNTRY HOME INVESTMENTS, INC.,<br><br>Defendants. | ) | C.A. No. 2:15-cv-00037-RWS-RSP<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Elbit Systems Land and C4I Ltd. ("Elbit") and Elbit Systems of America, LLC ("Elbit Systems of America") (collectively, "Plaintiffs"), by their undersigned attorneys, for their Complaint against defendants Hughes Network Systems, LLC ("Hughes"), Black Elk Energy Offshore Operations, LLC ("Black Elk"), BlueTide Communications, Inc. ("BlueTide"), and Country Home Investments, Inc. ("Country Home") (collectively, "Defendants"), hereby allege as follows, upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters:

## THE PARTIES

1. Plaintiff Elbit is a corporation organized and existing under the laws of Israel. Elbit is a wholly-owned subsidiary of Elbit Systems Ltd., an international defense

electronics company engaged in a wide range of programs throughout the world. Elbit maintains its principal place of business at 5 HaGavish Street, Netanya, Israel, 4250705.

2. Plaintiff Elbit Systems of America is a limited liability company organized and existing under the laws of the State of Delaware. Elbit Systems of America is a wholly-owned subsidiary of Elbit Systems Ltd. Elbit Systems of America maintains its principal place of business at 4700 Marine Creek Parkway, Fort Worth, Texas, 76179.

3. Defendant Hughes is a limited liability company organized and existing under the laws of Delaware. Hughes maintains its principal place of business at 11717 Exploration Lane, Germantown, Maryland, 20876. Hughes maintains a registered agent in Texas, Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701.

4. Defendant Black Elk is a limited liability company organized and existing under the laws of Texas. Black Elk maintains its principal place of business at 3100 South Gessner Road, Suite 215, Houston, TX 77063. Black Elk maintains a registered agent in Texas, CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, TX 75201.

5. Defendant BlueTide (d/b/a "BlueTide Communications Corporation") is a company organized and existing under the laws of Louisiana. BlueTide maintains its principal place of business at 200 Cummings Road, Broussard, LA 70518.

6. Defendant Country Home is a corporation organized and existing under the laws of Texas. Country Home owns and operates the Best Western Premier, Crown Chase Inn & Suites, located at 2450 Brinker Road, Denton, TX 76208, and maintains its headquarters at PO Box 789, Sulphur Springs, TX 75483.[1]

---

[1] In the original Complaint, Plaintiffs named "Helm Hotels Group" as a defendant, Dkt. 1 at ¶ 6. Helm responded, asserting that the Best Western Premier of Denton "is owned and operated by Country Home Investments, Inc.," and Country Home, "therefore, is the appropriate party (continued…)

## JURISDICTION AND VENUE

7. This is an action for patent infringement of United States Patent Nos. 6,240,073 ("the '073 patent") and 7,245,874 ("the '874 patent"), arising under the United States patent laws, Title 35, United States Code, including but not limited to 35 U.S.C. § 271.

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

9. This Court has personal jurisdiction over Defendants. Defendants conduct business in this judicial district and elsewhere in Texas and throughout the United States. Further, Defendants have committed and continue to commit acts of patent infringement in this District and elsewhere in Texas by marketing, selling, offering to sell, and/or using infringing broadband satellite systems and components, entitling Plaintiffs to relief.

10. Venue in this District is proper pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b), at least because each defendant has sold, offered to sell, or used the infringing broadband satellite systems and components in this District pursuant at least to 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 43 U.S.C. § 1333(a).

## THE IPOS STANDARD

11. The claimed invention of the '073 patent is infringed by broadband satellite systems that operate according to the Internet Protocol over Satellite ("IPoS") Standard, which was ratified as a U.S. Telecommunications Industry Association standard (TIA-1008-

---

against whom any allegations of infringement by Best Western Denton should have been asserted." Dkt. 21 at 2. To facilitate resolution of Helm's motion and reduce the Court's burden, Plaintiffs have amended the Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B) to name Country Home as a defendant instead of Helm.

2003) in November 2003. A true and correct copy of a Hughes White Paper describing the IPoS standard is attached as Exhibit A.

12. The IPoS standard specifies architecture and protocols for the transmission of Internet Protocol ("IP") packets between a central hub station and remote satellite terminals using geosynchronous satellites.

13. The IPoS standard is based upon Defendant Hughes's "HughesNet®" two-way satellite system.

14. Defendant Hughes manufactures and sells broadband satellite systems that are compliant with the IPoS standard, and components that make up such systems, such as the Hughes HX/HN broadband satellite systems. A true and correct copy of a Hughes publication advertising its IPoS-compliant broadband satellite systems is attached as Exhibit B.

15. Defendant BlueTide is a Louisiana-based company that has partnered with Hughes to install and manage Hughes's IPoS-compliant HX/HN broadband satellite systems for individual customers in the specific maritime context. In 2014, BlueTide spun off from Environmental & Safety Services International, Inc. ("ESSI"), where it had previously performed these functions for Hughes as the Communications Division of ESSI. A true and correct copy of a MarineLink news article discussing the relationship between Hughes and ESSI/BlueTide is attached as Exhibit C. As noted in the article, "[w]ith Hughes as the well-funded and reliable parent and the Hughes Maritime Broadband network at their disposal, ESSI is arguably the perfect service provider and conduit to the maritime customer; utilizing U.S. built Hughes hubs and modems, selling to end users and providing tier one and two support." Defendant Black Elk, for example, explained in the article that "the ESSI Deck Vision solution coupled with the Hughes Maritime Broadband service helps us operate more efficiently than ever."

16. Defendant Black Elk, a Houston-based oil and gas company, is a customer of Hughes and a user of Hughes's IPoS-compliant HX broadband satellite system. A true and correct copy of a Hughes publication advertising Black Elk's use of its broadband satellite system is attached as Exhibit D. As described in the publication, Hughes and/or ESSI/BlueTide have worked with Black Elk to implement the Hughes broadband satellite system within Black Elk's communications framework, which Hughes describes as the "Hughes Maritime Broadband solution." The publication notes that Hughes and ESSI "are equipping Black Elk-operated production platforms in the Gulf of Mexico with HX broadband satellite routers and providing high-speed Internet, SCADA, Wi-Fi, Fax, and VHF radio backhaul services," which Hughes describes as "a fully managed broadband satellite solution." Upon information and belief, Black Elk operates production platforms in Texas waters and in federal waters in the Gulf of Mexico, including in federal waters adjacent to this District.

17. Defendant Country Home, the owner and operator of the Best Western Premier hotel in Denton, Texas, is a customer of Hughes and a user of Hughes's IPoS-compliant HX/HN broadband satellite systems. A true and correct copy of a Hughes publication advertising the use of its broadband satellite systems at the Best Western Premier hotel in Denton, Texas is attached as Exhibit E. As described in the publication, Hughes has worked with Country Home to install a Hughes Digital Concierge, which relies on the Hughes broadband satellite systems, at least in Country Home's Best Western Premier property in Denton, Texas. The publication notes that Hughes "manages the interactive touchscreen displays" and "handles the technology and support." A true and correct copy of the Best Western Premier's webpage is also attached as Exhibit F, in which the hotel displays the Hughes Digital Concierge and notes that its "unique lobby" comes with a "touchscreen concierge," which it lists as an amenity.

18. Real Time Communications, LLC ("Real Time"), a Kilgore, Texas-based satellite communications services provider, is also a customer of Hughes and a provider of Hughes's HughesNet® broadband satellite Internet service, a service powered by Hughes's infringing satellite communications systems and their components.[2] A true and correct copy of a Hughes publication that advertises that Real Time manages service for "HughesNet mobile customers," signed by "Bryan Young" of "Real Time Communications," is attached as Exhibit N. A true and correct copy of a Hughes press release advertising how Real Time assisted, for example, customer M/D Totco in implementing the "HughesNet Optimized Virtual Private Network" is attached as Exhibit O.

19. Upon information and belief, Hughes has sold its IPoS-compliant HX/HN broadband satellite systems to other customers for use in a variety of contexts throughout the United States and worldwide, including but not limited to other maritime customers, in addition to Defendant Black Elk, for use in federal waters in the U.S. Gulf of Mexico. According to a true and correct copy of an ESSI publication, attached as Exhibit G, ESSI/BlueTide is a "specialist maritime systems integrator" that carries out the "installation and ongoing support" of the Hughes system for these maritime customers. The publication notes that Hughes provides technical support for its maritime customers, and that, "[b]ecause it is a fully-managed service, Hughes, in partnership with ESSI, can deliver a whole array of equipment" to the customers for use in the Hughes systems.

20. For example, Triton Diving Services, LLC ("Triton Diving"), a Louisiana-based limited liability company with its sales office in Houston, Texas, is a customer of Hughes

---

[2] Real Time was described in the Declaration of Emil Regard, "Managing Director and CEO" of BlueTide, as a Kilgore, Texas-based customer of "satellite service coverage" from BlueTide. Dkt. 23-3 at ¶ 5.

and uses Hughes's IPoS-compliant HX broadband satellite system in providing diving services to oil and gas companies in the U.S. Gulf of Mexico. A true and correct copy of a Hughes publication advertising Triton Diving's use of its broadband satellite system is attached as Exhibit H. As described in the publication, Hughes and/or ESSI/BlueTide have worked with Triton Diving to implement the Hughes broadband satellite system within Triton Diving's communications framework, which Hughes describes as the "Hughes Maritime Broadband solution." The publication notes that "Triton's broadband network and applications are fully managed by Hughes in partnership with ESSI," and that "ESSI installed Hughes's marine-stabilized VSAT antennas on Triton's fleet."

21. For further example, Hercules Offshore, Inc. ("Hercules"), a Delaware corporation based in Houston that provides drilling and liftboat services to oil and gas companies in the U.S. Gulf of Mexico and elsewhere, is and/or was a customer of Hughes and a user of Hughes's HX IPoS-compliant broadband satellite system. A true and correct copy of a Hughes publication advertising Hercules's use of its broadband satellite system is attached as Exhibit I. As described in the publication, Hughes and/or ESSI/BlueTide have worked with Hercules to implement the Hughes broadband satellite system within Hercules's communications framework, which Hughes describes as the "Hughes Maritime Broadband solution." The publication notes that Hughes and ESSI "are equipping the entire Hercules Offshore fleet of Class 120 to Class 230 liftboats in the U.S. Gulf of Mexico . . . with Hughes satellite-based broadband maritime services," and that the "broadband satellite services for Hercules Offshore are fully managed by Hughes in partnership with ESSI."

22. For further example, Bee Mar LLC ("Bee Mar"), a Louisiana-based maritime transportation limited liability company with its sales office in Sugar Land, TX, is a

customer of Hughes and a user of Hughes's IPoS-compliant HX broadband satellite system. A true and correct copy of a Hughes publication advertising Bee Mar's use of its broadband satellite system is attached as Exhibit J. As described in the publication, Hughes and/or ESSI/BlueTide have worked with Bee Mar to implement the Hughes broadband satellite system within Bee Mar's communications framework, which Hughes describes as the "Hughes Maritime Broadband solution." The publication notes that Hughes "is equipping Bee Mar's entire fleet of platform supply vessels," including those that serve "the Gulf of Mexico," "with its fully managed maritime solution in partnership with ESSI."

23. On information and belief, Hughes provides each of Black Elk, Country Home, Triton Diving, Hercules, and Bee Mar access to Hughes's IPoS-compliant HX/HN broadband satellite systems, and Hughes, BlueTide, and/or Real Time fully manage and support the customers' shared use of these systems.

## **THE GMR-1 STANDARD**

24. The claimed invention of the '073 patent is also infringed by satellite communications systems that operate according to the European Telecommunications Standards Institute's ("ETSI") GEO-Mobile Radio Interface Specifications ("GMR-1") standard and/or its variants. A true and correct copy of Version 3.3.1 of the Technical Specification for ETSI'S GMR-1 standard ("ETSI TS 101 376-1-3") is attached as Exhibit P.

25. The GMR-1 standard, and/or its variants, specify an interface and architecture that allows mobile satellite terminals to communicate over a satellite network.

26. Defendant Hughes manufactures and sells broadband satellite systems that are compliant with the GMR-1 standard (and/or its variants), and components that make up such systems. A true and correct copy of a publication, co-authored by a Hughes employee,

advertising a GMR-1-compliant "mobile satellite system" that uses "handheld terminals provided by Hughes Network Systems" is attached as Exhibit Q. The publication notes that "[Hughes Network Systems] is currently developing and deploying mobile satellite systems for Thuraya and ICO as well as Inmarsat Project BGAN-R."

**CELLULAR BACKHAUL SERVICES**

27. The claimed invention of the '874 patent is infringed by broadband satellite systems that provide cellular backhaul services via connections to E1/T1 interfaces at cellular backhaul base stations, including, but not limited to, the HX/HN broadband satellite systems. A true and correct copy of a Hughes white paper for cellular backhaul solutions is attached as Exhibit M.

28. As described in the white paper, Defendant Hughes "offers a full range of satellite-based Radio Access Network (RAN) backhaul solutions" that "provide high-quality links while optimizing space segment resource utilization by coupling the appropriate satellite technology with intelligent traffic optimization." Ex. M at 1. Defendant Hughes further states that it has "conducted extensive integration and certification testing with many of the industry-leading IP optimizers including: Memotec CX-U series of optimizers, Memotec NetPerformer-II optimizer, and Sevis 6000 series." *Id.* at 4. These IP optimizers are a material part of the patented system claimed in the '874 patent.

29. On information and belief, the Memotec CX-U series optimizers are marketed and sold by Memotec, Inc., which is a wholly owned subsidiary of Comtech EF Data Corp. On information and belief, Comtech EF Data Corp. is a corporation headquartered in Tempe, Arizona. A true and correct copy of a datasheet for the Memotec CX-U series, dated October 10, 2013, is attached as Exhibit R. As described in this datasheet, the CX-U series "brings together a flexible access device and mobile backhaul traffic optimization, offering a

variety of backhaul interfaces and transmission options" and the CX-U series products "support digital fractional T1/E1, high-speed serial and Ethernet network interfaces with a choice of protocols." Ex. R at 1. Furthermore, the datasheet states that "Memotec's satellite backhaul solution is unrivaled for backhauling mobile base station traffic over satellite links." *Id.* at 2.

30. On information and belief, the Memotec NetPerformer-II optimizer is marketed and sold by Memotec, Inc. which is a wholly owned subsidiary of Comtech EF Data Corp. On information and belief, Comtech EF Data Corp. is a corporation headquartered in Tempe, Arizona. A true and correct copy of a datasheet for the Memotec NetPerformer series, dated August 15, 2014, is attached as Exhibit S. As described in this datasheet, the NetPerformer series "provides a safe migration path from legacy TDM or Frame Relay networks to IP-centric networks." Ex. S at 1.

31. On information and belief, the Sevis 6000 series optimizers are marketed and sold by Sevis Systems, Inc., a corporation based out of 320 E. Main Street, Lewisville, Texas, in Denton County. A true and correct copy of a Sevis webpage advertising the Sevis 6000 series is attached as Exhibit T. As described on the webpage, the Sevis 6000 series optimizers "[c]onvert[] from E1 TDM to more efficient packet-based IP." Ex. T at 1. Furthermore, as described on the webpage, the Sevis 6000 series optimizers are "interoperable with major satellite vendors and provide[] support for SCPC, TDMA, and IP broadband satellite technologies." *Id.* at 3.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,240,073**

32. On May 29, 2001, United States Patent No. 6,240,073 ("the '073 patent"), which is entitled "Reverse Link for a Satellite Communication Network," was legally issued by the United States Patent and Trademark Office. A true and correct copy of the '073 patent is attached as Exhibit K.

33. Pursuant to 35 U.S.C. § 282, the ’073 patent is presumed valid.

34. When issued, the ’073 patent was assigned to Shiron Satellite Communications (1996) Ltd. (“Shiron”), and Shiron was the sole owner of the ’073 patent. In February 2009, Shiron became a wholly-owned subsidiary of Elbit Systems Ltd., and now operates as part of Elbit Systems Ltd. By assignment, Elbit is the sole owner of the ’073 patent. Elbit and Elbit Systems of America jointly retain the exclusive right to enforce the ’073 patent.

35. Hughes manufactures and sells broadband satellite systems that comply with the IPoS standard, including but not limited to the HX/HN broadband satellite systems. Hughes also manufactures and sells broadband satellite systems that comply with other standards, including but not limited to the GMR-1 standard. Hughes has infringed and continues to infringe one or more claims of the ’073 patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale in or within the United States of products practicing the IPoS standard, the GMR-1 standard, and/or other relevant satellite communications standards. By manufacturing, using, selling, importing, and/or offering to sell these products and their components, Hughes has in the past and continues to infringe one or more of the claims of the ’073 patent, including under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

36. Defendant BlueTide partners with Hughes to implement the infringing IPoS-compliant HX/HN broadband satellite systems for maritime customers, and to support those customers in using the infringing systems. BlueTide is a recent spinoff of ESSI, which previously performed these functions. BlueTide has infringed and continues to infringe one or more claims of the ’073 patent, both while acting as the Communications Division of ESSI and since its spin off into an independent company. The infringing acts include, but are not limited

to, the use, sale, importation, and/or offer for sale in or within the United States of products practicing the IPoS standard. By using, selling, importing, and/or offering to sell these products and their components, BlueTide has in the past and continues to infringe one or more of the claims of the ’073 patent, including under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

37. Defendant Black Elk is a maritime customer of Hughes and/or BlueTide and a user of the Hughes IPoS-compliant HX infringing broadband satellite system, which Hughes, in the maritime context, refers to as the “Hughes Maritime Broadband solution.” Hughes and/or ESSI/BlueTide have worked with Black Elk to implement the Hughes HX system within Black Elk’s communications framework, with Hughes and/or BlueTide fully managing and supporting the system on an ongoing basis. Black Elk has infringed and continues to infringe one or more claims of the ’073 patent. The infringing acts include, but are not limited to, the use in the United States of products practicing the IPoS standard. By using these products and their components, Black Elk has in the past and continues to infringe one or more of the claims of the ’073 patent, including under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

38. Upon information and belief, Hughes and ESSI/BlueTide have sold or offered to sell Black Elk components of, and access to, the Hughes IPoS-compliant HX infringing broadband satellite system for use on Black Elk oil platforms and wells located in Texas waters, and Black Elk has used the infringing system on these installations. Based on these activities, Hughes, BlueTide, and Black Elk have each committed the tort of patent infringement in Texas, and this action arises at least in part from such infringement.

39. Upon information and belief, Hughes and ESSI/BlueTide have sold or offered to sell Black Elk components of, and access to, the Hughes IPoS-compliant HX infringing broadband satellite system for use on Black Elk oil platforms and wells located in federal waters in the U.S. Gulf of Mexico adjacent to this District, and Black Elk has used the infringing system on these installations. Upon information and belief, the Black Elk platforms and wells located in the U.S. Gulf of Mexico adjacent to this District are installations permanently or temporarily attached to the seabed for purposes of exploring for, developing, or producing resources, and the laws of the United States, including the Patent Act, are extended to these platforms and wells pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1333(a). Based on these activities, Hughes, BlueTide, and Black Elk have each committed the tort of patent infringement in this District, and this action arises at least in part from such infringement.

40. Defendant Country Home is a customer of Hughes and a user of the Hughes IPoS-compliant HX/HN infringing broadband satellite systems. Hughes has worked with Country Home to implement the infringing Hughes satellite systems at least in the Hughes Digital Concierge in Country Home's Best Western Premier property in Denton, Texas, with Hughes fully managing and supporting the systems on an ongoing basis. Country Home has infringed and continues to infringe one or more claims of the '073 patent. The infringing acts include, but are not limited to, the use in the United States of products practicing the IPoS standard. By using these products and their components, Country Home has in the past and continues to infringe one or more of the claims of the '073 patent, including under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

41. Upon information and belief, Hughes has sold or offered to sell Country Home components of, and access to, the Hughes IPoS-compliant HX/HN infringing broadband satellite systems for use by Country Home in this District, and Country Home has used the infringing systems in this District. Based on these activities, Hughes and Country Home have each committed the tort of patent infringement in this District, and this action arises at least in part from such infringement.

42. Defendants have thus each infringed one or more claims of the ’073 patent by making, using, selling, importing, and/or offering for sale the same infringing Hughes IPoS-compliant HX/HN broadband satellite systems, including within this District. Moreover, Hughes and/or BlueTide fully implement, manage, and support the infringing HX/HN broadband satellite systems for shared use by Black Elk and Country Home.

43. Hughes’s customers, including at least Defendants BlueTide, Black Elk, and Country Home, and non-parties Real Time, Triton Diving, Hercules, and Bee Mar, have been and are now infringing, including under 35 U.S.C. § 271(a), one or more claims of the ‘073 patent by using, selling, offering to sell, and/or importing in or within the United States Hughes HX/HN broadband satellite systems practicing the IPoS standard.

44. Hughes has, since at least October 2005, known or been willfully blind to the fact that such acts by its customers of using, selling, offering to sell, and/or importing Hughes HX/HN broadband satellite systems directly infringe the ’073 patent.

45. For example, during the prosecution of Hughes’s U.S. Patent No. 7,085,247, entitled “Scheduling and queue servicing in a satellite terminal for bandwidth allocations in a broadband satellite communications system,” issued August 1, 2006, the patent

examiner at the United States Patent and Trademark Office cited the ’073 patent as relevant prior art to Hughes.

46. Moreover, during the prosecution of Hughes’s U.S. Patent No. 7,164,661, entitled “System and Method for Providing a Two-Way Satellite System,” which issued on January 16, 2007, the patent examiner not only cited the ’073 patent as relevant prior art to Hughes, but asserted the ’073 patent as anticipatory prior art that was used to reject the pending claims of the Hughes patent application. On October 20, 2005, in response to this rejection, Hughes submitted an Amendment and Remarks that analyzed and described the teachings of the ’073 patent.

47. Additionally, during the prosecution of Hughes’s U.S. Patent No. 7,468,972, entitled “Method and system for providing efficient data transmission based upon a contention protocol,” which was issued on December 23, 2008, the patent examiner cited the ’073 patent as relevant prior art to Hughes.

48. Hughes’s extensive knowledge of the ’073 patent, which covers the Hughes HX/HN broadband satellite systems, made it known to Hughes that any use, sale, offer to sell, or importation of the Hughes HX/HN broadband satellite systems would directly infringe the ’073 patent, or, at the very least, rendered Hughes willfully blind to the fact that any use, sale, offer to sell, or importation of the Hughes HX/HN broadband satellite systems would directly infringe the ’073 patent.

49. Having known or been willfully blind to the fact that its customers’ use, sale, offer to sell, or importation of the Hughes HX/HN broadband satellite systems would directly infringe the ’073 patent, Hughes, upon information and belief, actively encouraged and continues to actively encourage its customers to directly infringe the ’073 patent by using,

selling, offering to sell, or importing Hughes's HX/HN broadband satellite systems, by, for example, marketing its infringing systems to customers; working with its customers to implement and install the infringing systems and components thereof; assisting BlueTide and Real Time in implementing and installing the infringing systems and components thereof for customers; fully supporting and managing its customers' continued use of the infringing systems; and providing technical assistance to customers during their continued use of the infringing systems.

50. Thus, Hughes has specifically intended to induce, and has induced, its customers to infringe one or more claims of the '073 patent, and Hughes has known of or been willfully blind to such infringement. Hughes has advised, encouraged, and/or aided its customers to engage in direct infringement, including through its encouragement, advice, and assistance to customers to use the infringing HX/HN broadband satellite systems.

51. Based on, among other things, the foregoing facts, Hughes has induced, and continues to induce, infringement under 35 U.S.C. § 271(b) of one or more claims of the '073 patent.

52. Further, Hughes sells components to its customers that are especially made and adapted—and specifically intended by Hughes—to be used as components and material parts of the system covered by the '073 patent. For example, Hughes sells HX/HN series satellite modems to customers, which customers use to access and implement the infringing HX/HN broadband satellite systems, and without which customers would be unable to use the infringing HX/HN broadband satellite systems.

53. Upon information and belief, these components, including the infringing HX/HN series satellite modems, are not staple articles or commodities of commerce, and,

because they are designed to work only with the HX/HN broadband satellite systems, they do not have substantial non-infringing uses.

54. At least since October 2005, based on the forgoing facts, Hughes has known or been willfully blind to the fact that such components are especially made and adapted for—and are in fact used in—systems that are covered by the ’073 patent, and that the components are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

55. Based on, among other things, the forgoing facts, Hughes has contributorily infringed, and continues to contributorily infringe, one or more claims of the ’073 patent under 35 U.S.C. § 271(c).

56. Defendants’ acts of direct and indirect infringement have caused damage to Plaintiffs and Plaintiffs are entitled to recover from Defendants the damages sustained as a result of Defendants’ wrongful acts in an amount subject to proof at trial. The infringement of Plaintiffs’ exclusive rights under the ’073 patent has damaged and will continue to damage Plaintiffs, causing irreparable harm, for which there is no adequate remedy at law, with the balance of hardships between Plaintiffs and Defendants, and the public interest, warranting an injunction.

57. Upon information and belief, Hughes’s familiarity with the ’073 patent, which clearly covers at least Hughes’s HX/HN broadband satellite systems, gave Hughes knowledge, or should have given Hughes knowledge, that there was an objectively high likelihood that Hughes’s manufacture, use, sale, importation, and/or offer for sale of its broadband satellite systems constitutes infringement of the ’073 patent, and Hughes nonetheless manufactured, used, sold, imported, and/or offered for sale its broadband satellite systems

notwithstanding that there was an objectively high likelihood that these actions constituted infringement of the ’073 patent.

58. Upon information and belief, the infringement of the ’073 patent by Hughes is willful and deliberate, and with full knowledge of the patent, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to reasonable attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,245,874**

59. On July 17, 2007, United States Patent No. 7,245,874 (“the ’874 patent”), which is entitled “Infrastructure for Telephony Network,” was legally issued by the United States Patent and Trademark Office. A true and correct copy of the ’874 patent is attached as Exhibit L.

60. Pursuant to 35 U.S.C. § 282, the ’874 patent is presumed valid.

61. When issued, the ’874 patent was assigned to Shiron Satellite Communications (1996) Ltd. (“Shiron”), and Shiron was the sole owner of the ’874 patent. In February 2009, Shiron became a wholly-owned subsidiary of Elbit Systems Ltd., and now operates as part of Elbit Systems Ltd. By assignment, Elbit is the sole owner of the ’874 patent. Elbit and Elbit Systems of America jointly retain the exclusive right to enforce the ’874 patent.

62. Hughes manufactures and sells broadband satellite systems that provide cellular backhaul services via connections to E1/T1 interfaces at cellular backhaul base stations, including, but not limited to, the HX/HN broadband satellite systems. A true and correct copy of a Hughes white paper explaining how its HX/HN broadband satellite systems provide such cellular backhaul services is attached as Exhibit M.

63. Hughes has infringed and continues to infringe one or more claims of the ’874 patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale in or within the United States of products that provide these cellular backhaul services. By manufacturing, using, selling, importing, and/or offering to sell these products and their components, Hughes has in the past and continues to infringe one or more of the claims of the ’874 patent, including under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

64. In addition, Hughes’s customers have been and are now infringing, including under 35 U.S.C. § 271(a), one or more claims of the ’874 patent by using, selling, offering to sell, and/or importing in or within the United States Hughes’s cellular backhaul services alone and/or in combination with traffic optimizers.

65. Hughes has, since at least the filing of this action, known or been willfully blind to the fact that such acts by its customers of using, selling, offering to sell, and/or importing cellular backhaul services directly infringe the ’874 patent.

66. Hughes, upon information and belief, has actively encouraged and continues to actively encourage its customers to directly infringe the ’874 patent by using, selling, offering to sell, or importing Hughes’s HX/HN broadband satellite systems alone and/or in combination with traffic optimizers (referred to by Hughes as “Bandwidth Optimizer Equipment”), by, for example, marketing such infringing systems to customers; working with its customers to implement and install the infringing systems and components thereof; assisting its customers in implementing and installing the infringing systems and components thereof; fully supporting and managing its customers’ continued use of the infringing systems; and providing technical assistance to customers during their continued use of the infringing systems.

67. Thus, Hughes has specifically intended to induce, and has induced, its customers to infringe one or more claims of the ’874 patent, and Hughes has known of or been willfully blind to such infringement. Hughes has advised, encouraged, and/or aided its customers to engage in direct infringement, including through its encouragement, advice, and assistance to customers to use the infringing HX/HN broadband satellite systems alone and/or in combination with traffic optimizers.

68. Based on, among other things, the foregoing facts, Hughes has induced, and continues to induce, infringement under 35 U.S.C. § 271(b) of one or more claims of the ’874 patent.

69. Hughes’s acts of infringement have caused damage to Plaintiffs and Plaintiffs are entitled to recover from Hughes the damages sustained as a result of Hughes’s wrongful acts in an amount subject to proof at trial. The infringement of Plaintiffs’ exclusive rights under the ’874 patent has damaged and will continue to damage Plaintiffs, causing irreparable harm, for which there is no adequate remedy at law, with the balance of hardships between Plaintiffs and Defendants, and the public interest, warranting an injunction.

## DEMAND FOR JURY TRIAL

70. Plaintiffs demand a jury trial on all claims and issues, as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment in their favor and against Defendants, and respectfully request the following relief:

A. A judgment that Defendants have infringed one or more of the claims of the ’073 patent, both literally and under the doctrine of equivalents;

B. A judgment that Defendants account for and pay Plaintiffs all damages caused by the infringement of the ’073 patent, which by federal statute can be no less than a reasonable royalty;

C. That Plaintiffs be granted pre-judgment and post-judgment interest on the damages caused by reason of Defendants’ infringement of the ’073 patent;

D. An order permanently enjoining Defendants and their officers, agents, employees, and those acting in privity with them, from further infringement of the ’073 Patent;

E. A judgment that Hughes has infringed one or more of the claims of the ’874 patent, both literally and under the doctrine of equivalents;

F. A judgment that Hughes account for and pay Plaintiffs all damages caused by the infringement of the ’874 patent, which by federal statute can be no less than a reasonable royalty;

G. That Plaintiffs be granted pre-judgment and post-judgment interest on the damages caused by reason of infringement of the ’874 patent by Hughes;

H. An order permanently enjoining Hughes and its officers, agents, employees, and those acting in privity with it from further infringement of the ’874 Patent;

I. That this be considered an exceptional case under 35 U.S.C. § 285;

J. That Plaintiffs be granted their reasonable attorneys’ fees in this action;

K. That all costs and expenses be awarded to Plaintiffs; and

L. That Plaintiffs be granted such other and further relief that the Court deems to be just and equitable.

Dated: November 23, 2015

Respectfully submitted,

*/s/ Kurt G. Calia by permission Wesley Hill*
Kurt G. Calia – LEAD ATTORNEY
Cal. Bar No. 214300

**Covington & Burling LLP**
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
(650) 632-4700
*kcalia@cov.com*

Ranganath Sudarshan
Cal. Bar No. 244984
**Covington & Burling LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
*rsudarshan@cov.com*

Wesley Hill
Tex. Bar No. 24032294
**Ward, Smith & Hill, PLLC**
1127 Judson Road, Ste 220
Longview, Texas 75601
(903) 757-6400
*wh@wsfirm.com*

*Attorneys for Plaintiffs*
*Elbit Systems Land and C4I Ltd. and Elbit Systems of America, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 23rd day of November 2015.

/s/ *Wesley Hill*
Wesley Hill