**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ELBIT SYSTEMS LAND AND C4I LTD. and ELBIT SYSTEMS OF AMERICA, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2:15-cv-00037-RWS-RSP |
| HUGHES NETWORK SYSTEMS, LLC, BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC, BLUETIDE COMMUNICATIONS, and COUNTRY HOME INVESTMENTS, INC., | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
RENEWED PARTIAL MOTION TO DISMISS AS TO WILLFULNESS
AND INDIRECT INFRINGEMENT FOR FAILURE TO STATE A CLAIM**

## I.      INTRODUCTION

Defendant Hughes Network Systems, LLC's ("Hughes") represents to the Court that Plaintiffs' allegations of willfulness and indirect infringement of U.S. Patent No. 6,240,073 ("'073 Patent") are "based only on the alleged citation of an asserted patent by an examiner during patent prosecution almost a decade ago" and that such prosecution was "unrelated" to the allegations in this case.  Dkt. 69 ("Def. Br.") at 1, 2.  These representations are incorrect, and on that basis alone Hughes' Motion should be denied.  Hughes also argues that Plaintiffs' claims of induced infringement of U.S. Patent No. 7,245,874 ("'874 Patent") are deficient, even though it acknowledges Plaintiffs' allegations that Hughes "provided, marketed, supported, and assisted with implementing and installing the systems accused of infringing" and "encouraged its customers to directly infringe."  Def. Br. at 7–8.  Based on those allegations alone, the claims are properly pleaded.

As detailed in the Second Amended Complaint (Dkt. 53, hereinafter "Compl."),[1] Plaintiffs' allegations of willfulness and indirect infringement of the '073 Patent are based on Hughes' extensive knowledge of that patent gained through patent prosecution activities at the Patent and Trademark Office ("PTO").  *Three* different PTO examiners cited the '073 Patent to

---

[1] Hughes asserts that Plaintiffs filed the First Amended Complaint (Dkt. 28) and the Second Amended Complaint (Dkt. 53) in response to the numerous grounds on which Defendants moved to dismiss, including the pleading arguments made here.  Dkt. 69 at 2; *id.* at 2 n.2.; *id.* at 3. Plaintiffs' amendments in the First Amended Complaint, however, were unrelated to this motion. The changes pertained only to one of Defendants' three motions, which was filed by then-defendant Helm Hotels Group.  *See* Dkt. 21.  Plaintiffs addressed Helm Hotels Group's motion by instead naming Country Home Investments, Inc. as a defendant.  Plaintiffs also added factual allegations to the First Amended Complaint about Real Time Communications, LLC, another Hughes customer.  Dkt. 28 ¶¶ 18, 23, 38, 44.  But Plaintiffs did not rely on those allegations in their responses to Defendants' original motions, nor do they do so now.

In the Second Amended Complaint, Plaintiffs did add properly pleaded allegations of induced infringement of the '874 Patent.  Dkt. ¶¶ 66–68.  Those allegations, however, were not included in any prior pleading and they did not address any supposed deficiency in the allegations of the original or First Amended Complaint.

Hughes multiple times during the prosecution of three separate patents owned and prosecuted by Hughes.  All three of these Hughes patents are directed to techniques for transmitting data over satellite networks, which is the same subject matter as Plaintiffs' '073 Patent.  Thus, contrary to Hughes' argument, Plaintiffs' claims are not "based only on the alleged citation of an asserted patent by an examiner," Def. Br. at 1, and the three patents prosecuted by Hughes were not "unrelated" to the subject matter of this litigation, *id.* at 2.

Hughes also omits to mention that on one of these occasions, as explained in the Complaint, the PTO not only rejected Hughes' claims as anticipated by the asserted '073 Patent, but Hughes submitted a detailed Amendment and Remarks in which it analyzed, described, and purported to distinguish its own patent application from the '073 Patent.  This extensive knowledge of the '073 Patent plausibly shows that Hughes knew that any use, sale, offer to sell, or importation of Hughes' own accused broadband satellite systems would directly infringe the '073 Patent, or, at the very least, rendered Hughes willfully blind to this fact.  Plaintiffs' willfulness allegations are therefore adequately pleaded.

Hughes also overlooks the Complaint's detailed allegations showing Hughes' knowledge and encouragement of infringement of the '073 Patent by, among others, its customers Defendants BlueTide, Black Elk, and Country Home—e.g., Hughes marketed infringing systems to these customers, worked with these customers to implement and install the infringing systems and their components, and fully supported and managed the customers' continued use of the infringing systems, all with notice of the '073 Patent.  Compl. ¶¶ 15–23, 36–50.  These allegations are ample to survive Hughes' motion to dismiss Plaintiffs' indirect infringement allegations.  Hughes nonetheless argues that "the Second Amended Complaint does not plead

facts sufficient to support any Defendant's knowledge or willful blindness of the alleged

infringement in support or induced infringement or contributory infringement."[2]  Def. Br. at 5.

Regarding its induced infringement of the '874 Patent, Hughes likewise discounts the

Complaint's detailed allegation of the active encouragement of its customer's direct

infringement.  Hughes acknowledges Plaintiffs' allegations (that Hughes markets systems that

infringe the '874 Patent to customers, works with customers to implement and install the

infringing systems and their components, and fully supports and manages the customers'

continued use of the infringing systems, Compl. ¶ 66).  This acknowledgement is fatal to

---

[2] After Plaintiffs filed the First Amended Complaint, the parties agreed that Defendants' renewed motions would be "a true re-submission of their earlier filed motions."  Decl. of Ranganath Sudarshan, Ex. 4 at 2.  Defendants agreed in writing that their re-filed motions would "not add substantive arguments" and would only make "procedural changes necessary to conform those motions to the first amended complaint, including citations."  *Id.* at 1.  However, in the renewed motion, Defendants appear to have unilaterally rescinded this agreement by making substantive changes to their originally-filed motion.  Namely, in their original motion to dismiss, Defendants challenged Plaintiffs' allegations of specific intent to induce infringement, whereas they now challenge allegations of "*knowledge of the direct infringement*."  *Compare* Dkt. 22 at 5, *with* Def. Br. at 5.  Defendants thus appeared to concede that specific intent *is* adequately pleaded, and have thus conceded that the original basis for dismissal is insufficient. Plaintiffs also believe that the Court is entitled to disregard Defendants' new argument, which clearly could have been made in response to the originally-filed complaint.  *See, e.g., Frye Family P'ship v. Rough Creek Investors Grp., Inc.*, No. 4:11–CV–193, 2011 WL 3299932, at *2 (E.D. Tex. July 8, 2011) (noting that "the simple act of filing an amendment does not automatically moot a motion to dismiss"); *People's Choice Home Loan, Inc. v. Mora*, No. 3:06–CV–1709–G, 2007 WL 120006, at *2 (N.D. Tex. Jan. 18, 2007); *Sunset Fin. Res., Inc. v. Redevelopment Grp. V, LLC*, 417 F. Supp. 2d 632, 642 n.15 (D.N.J. 2006).

After Plaintiffs filed the Second Amended Complaint, Defendants again agreed that the renewed motion would not "raise a new basis for dismissal and essentially agree[d] that the changes to the motions will be to the form rather than substance." Decl. of Ranganath Sudarshan, Ex. 5 at 1. Despite this agreement, Hughes nevertheless added a new challenge in its renewed motion, specifically to Plaintiffs claim of induced infringement of the '874 Patent.  This argument re-raised the specific intent argument that Hughes had previously dropped.  Since the inducement claim for the '874 Patent was first added in the Second Amended Complaint, Plaintiffs have adjusted this response to address the new argument that rehashes a conceded point on specific intent, despite Defendants' disregard of the parties' agreement.

Hughes' motion to dismiss.  But relying on semantics, Hughes somehow argues that the

allegations of active encouragement do not show that it "directed" its customers to infringe.

To the extent Hughes finds fault with the substance of Plaintiffs' willfulness and indirect

infringement allegations, it appears to confuse pleading standards with Plaintiffs' ultimate

burden on the merits.  Plaintiffs have more than met the notice pleading requirements of Federal

Rule of Civil Procedure 8 ("Rule 8").  Therefore, Plaintiffs respectfully request the Court to deny

this partial motion to dismiss.

## II.  PLAINTIFFS' DETAILED FACTUAL ALLEGATIONS RELATED TO WILLFULNESS AND INDIRECT INFRINGEMENT

Plaintiffs' Complaint includes detailed allegations showing that Hughes has willfully and

indirectly infringed the '073 Patent.  For example, the Complaint shows that Hughes knew of the

'073 Patent since at least October 2005.  Compl. ¶¶ 44–48.  In 2005, Hughes was prosecuting

U.S. Patent No. 7,164,661 ("'661 Patent"), which pertains to satellite communications systems

like those at issue here.  *Id.* ¶ 46.  Hughes' '661 Patent is titled "System and Method for

Providing a Two-Way Satellite System," *id.*; Plaintiffs' '073 Patent is titled "Reverse Link for a

Satellite Communication Network," *id.* ¶ 32.  The reviewing PTO examiner rejected Hughes'

application as anticipated by and obvious over the '073 Patent.  Decl. of Ranganath Sudarshan,

Ex. 1,[3] U.S. Patent Appl. 09/785,755, July 28, 2005 Final Rejection at 2–5.

Hughes filed a response to that rejection on October 20, 2005, in which it analyzed the

'073 Patent.  Compl. ¶ 46.  Hughes' analysis was thorough.  Ex. 2, U.S. Patent Appl. 09/785,755,

Oct. 20, 2005 Response at 9–10.  Hughes described the reverse link systems disclosed in the

'073 Patent and the three message types the systems use.  *Id.*  Hughes also detailed the systems'

---

[3] Hereinafter, references to the Sudarshan Declaration will be referenced by their Exhibit number.

two modes of operation, the circumstances under which those modes are used, and how the systems choose between the two modes.  *Id.* at 10.  Based on this explanation, Hughes tried to distinguish its patent claims.  *Id.*  The attempt failed; Hughes had to "amend[] [its] independent claims 1 and 23 to further distinguish over the cited prior art," namely, the '073 Patent.  Ex. 3, U.S. Patent Appl. 09/785,755, May 16, 2006 Response at 9.

The Complaint also explains that PTO examiners cited the '073 Patent as relevant prior art for two other Hughes patents.  Compl. ¶¶ 45, 47.  Again, both patents pertain to satellite communication systems, i.e., related subject matter to Plaintiffs' asserted '073 Patent.  The first, U.S. Patent No. 7,085,247, is titled "Scheduling and Queue Servicing in a Satellite Terminal for Bandwidth Allocations in a Broadband Satellite Communications System."  *Id.* ¶ 45.  The second, U.S. Patent No. 7,468,972, is titled "Method and System for Providing Efficient Data Transmissions Based Upon a Contention Protocol."  *Id.* ¶ 47.

The Complaint alleges that, given Hughes' familiarity with the '073 Patent, Hughes knew or should have known of the objectively high likelihood that the patent covers the accused products, and that Hughes' manufacture, use, and sale of those products constituted infringement.  *Id.* ¶¶ 48, 57.  Hughes nevertheless manufactured, used, and sold the accused products, and continues to do so.  *Id.* ¶ 48.  Likewise, Hughes knew or should have known that its customers' use and sale of the accused products directly infringes the '073 Patent.  *Id.*  Yet Hughes actively encouraged, and continues to actively encourage, its customers' infringement.  *Id.* ¶ 49.

Hughes' knowledge and encouragement are extensive, as the Complaint explains over fifteen paragraphs.  *Id.* ¶¶ 15–23, 36–37, 40, 42, 49–50.  Hughes has partnered with Defendant BlueTide to commercialize the accused systems and provide customer support.  *Id.* ¶¶ 15–16,

20–23, 36–39, 43, 49.   Together, they have fully implemented, managed, and supported the infringing systems at least for Black Elk, Triton Diving Services, LLC, Hercules Offshore, Inc., and Bee Mar LLC.  *Id.* ¶¶ 15–16, 20–23, 36–39, 43, 49.  Hughes has done the same for Defendant Country Home.  *Id.* ¶¶ 17, 23, 40–42, 49.  Hughes' advice, encouragement, and assistance show that it knew of—or was at least willfully blind towards—its customers' direct infringement of the '073 Patent.  *Id.* ¶¶ 48–49.  Similarly, Plaintiffs allege in the Complaint that Hughes' actions show it induced or contributed to the customers' infringement, and that Hughes specifically intended that the customers infringe.  *Id.* ¶¶ 50–55.

Regarding the '874 Patent, the Complaint alleges that Hughes' customers infringe through their use, sales, and importation of cellular backhaul services.  *Id.* ¶ 64.  Hughes has actively encouraged this infringement by implementing, managing, and supporting the infringing use.  *Id.* ¶ 66.  Hughes thus knew of, or was willfully blind towards, its customer's infringement of the '874 Patent.  *Id.* ¶ 65.  This conduct amounts to specific intent to induce infringement of the '874 Patent, and forms the basis of Plaintiffs' claim.  *Id.* ¶¶ 67–68.

## III.   LEGAL STANDARD

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks omitted).  Courts accept as true all facts alleged in a complaint, and view the facts in the light most favorable to a plaintiff.  *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  But "the pleading standard Rule 8 announces does not require 'detailed factual allegations.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

6

In patent cases, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) (citing *Twombly*, 550 U.S. at 565 n.10).  The pleaded facts need only "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  Courts may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## IV.    PLAINTIFFS HAVE ADEQUATELY PLEADED WILLFUL INFRINGEMENT BY HUGHES

Hughes' request to dismiss Plaintiffs' willfulness allegations should be denied because Plaintiffs have adequately pleaded willful infringement by showing that Hughes knew of the '073 Patent since at least October 2005.  Hughes' Motion confuses the notice pleading requirement for willful infringement with Plaintiffs' burden on the merits.  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) ("This does not mean, however, that [plaintiff] must prove its case at the pleading stage.").

"A plaintiff need only a good faith basis for alleging willful infringement." *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 6:12-cv-366 MHS-JDL, 2013 WL 8482270, at *5 (E.D. Tex. Mar. 6, 2013) (citing *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007)).  To establish its claim of willful infringement against Hughes, Plaintiffs must demonstrate:  (1) that there was an objectively high likelihood that Defendants' activities constituted infringement of a valid patent, and (2) either that Hughes subjectively knew of the risk of infringement or the risk of infringement was so obvious that Hughes should have known

7

of the risk.  *See Seagate*, 497 F.3d at 1371.  "Actual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement, but the complaint must adequately allege factual circumstances in which the patents-in-suit are called to the attention of the defendants."  *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 236 (D. Del. 2012) (internal quotation marks omitted).[4]

In this case, no inference is even necessary to conclude that Hughes knew of the '073 Patent because, as the Complaint explains, Hughes directly analyzed and explained the '073 Patent in PTO filings in its unsuccessful attempt (without amendment) to secure patent claims of its own concerning satellite communications.  Indeed, district courts, including this one, recognize that knowledge of a patent can be established for willful infringement by a defendant's prosecution proceedings involving the patent.  *See, e.g.*, *Advanced Data Access LLC v. Nanya Tech. Corp.*, No. 6:11-cv-473 LED-JDL, 2012 WL 10873894, at *3–4 (E.D. Tex. Apr. 24, 2012) (Allegation that asserted patent "was cited on three different occasions in Micron's own patents" "may, if incorporated into its complaint, make Advanced Data's willfulness allegations against Micron sufficient."); *Abstrax, Inc. v. Dell, Inc.*, No. 2:07-CV-221-DF-CE, 2009 WL 3255089, at *3 (E.D. Tex. Oct. 7, 2009) ("To be sure, a reasonable jury could find that Dell learned of the patent-in-suit either through Mr. Crook or through prosecution of its own patent.").  Because knowledge can be shown through PTO proceedings like Hughes' here, courts have denied motions to dismiss willful infringement claims when such proceedings have occurred and are alleged in the complaint.  *See Intellectual Ventures I*, 2014 WL 4755518, at *2 ("A complaint may sufficiently plead a defendant's actual knowledge when a plaintiff alleges that a defendant

---

[4] *See also Intellectual Ventures I LLC v. AT & T Mobility LLC*, No. 13-1668-LPS, 2014 WL 4755518, at *2 (D. Del. Sept. 24, 2014); *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, No. 13-2052-LPS, 2014 WL 4675316, at *8 (D. Del. Sept. 19, 2014).

previously filed papers with the PTO identifying the patents as prior art.") (internal quotation marks omitted); *Potter Voice Techs., LLC v. Apple Inc.*, No. C 13-1710 CW, 2014 WL 46768, at *3 (N.D. Cal. Jan. 6, 2014) (denying motion to dismiss because plaintiff alleged that defendant learned of asserted patent when "it was cited to them in the prosecution history").

Hughes attempts to minimize its knowledge of the '073 Patent by characterizing the aforementioned activities as "only the citation of the '073 patent during unrelated prosecution in the USPTO almost a decade ago."  Def. Br. at 2.  But, as discussed above, Hughes neglects to mention that these activities pertained to Hughes' own patent applications for subject matter *related* to the subject matter of the '073 Patent, and that Hughes analyzed and discussed the '073 Patent after the PTO rejected Hughes' pending claims as anticipated in view of (i.e., directed to the same invention as) the '073 Patent.  *See* Compl. ¶ 46 (Hughes "analyzed and described the teachings of the '073 Patent" in October 2005).  The '073 Patent was also cited as relevant prior art during the prosecution of two other Hughes patents.  *Id.* ¶¶ 45, 47.  "[T]he bar for pleading willful infringement is not high."  *Lodsys, LLC v. Brother Int'l Corp.*, No. 2:11-CV-90-JRG, 2012 WL 760729, at *4 (E.D. Tex. Mar. 8, 2012).  Plaintiffs' allegations clear the bar.

The cases which Hughes cites in its brief do not support its argument.  For example, unlike Hughes' detailed prosecution dialogue about the '073 Patent, the asserted patent in *Callwave* was identified only in Information Disclosure Statements, presumably among many references.  *See Callwave Commc'ns LLC v. AT & T Mobility LLC*, No. CV 12-1701-RGA, 2014 WL 5363741, at *2 (D. Del. Jan. 28, 2014).  There was no allegation in *Callwave* that the defendant even examined the asserted patent, let alone analyzed it in detail.  *Id.*  The PTO transactions in *Chalumeau* were even more tenuous—the plaintiff there did not adequately connect the prosecution to the defendant.  *See Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No.

11-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012).  Here, by contrast, Hughes

itself examined the '073 Patent and submitted its analysis to the PTO.  Compl. ¶ 46.

　　　Hughes asserts that the Complaint contains no facts showing objective recklessness.  Def.

Br. at 5.  But "objective recklessness" refers back to the objective and subjective elements of

willfulness.  *See U.S. Ethernet Innovations*, 2013 WL 8482270, at *5 n.2 ("By using the term

'objective recklessness' it is the Court's intent to encompass the objective and subjective

requirements of a willfulness inquiry.").  As explained in the cases Hughes cites, these elements

are adequately pleaded with facts supporting knowledge of the patent and allegedly infringing

conduct despite such knowledge.  *See Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*,

No. 13-2012-SLR, 2014 WL 5780877, at *5 (D. Del. Nov. 5, 2014) ("Although actual

knowledge of infringement or the infringement risk need not be pled, the complaint must

adequately allege factual circumstances in which the patents-in-suit are called to the attention of

the defendants.") (internal quotation marks omitted); *Neology, Inc.*, 2014 WL 4675316, at *8.

Both are present here.  Compl. ¶¶ 44–49.

　　　For these reasons, Hughes' request to dismiss the willfulness claim should be denied.

Plaintiffs' allegations make the claim amply plausible, and anything but speculative.[5]

---

[5] Because Plaintiffs' claim for costs and attorneys' fees under 35 U.S.C. § 285 is based, at least
in part, on a well-pleaded willfulness claim, dismissal of that prayer for relief would be
improper.  *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337,
1347 (Fed. Cir. 2004) ("35 U.S.C. § 285 provides that 'the court in exceptional cases may award
reasonable attorney fees to the prevailing party'; and the court has confirmed that a finding of
willful infringement may qualify a case as exceptional under § 285."); *Modine Mfg. Co. v. Allen
Grp., Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990) ("An express finding of willful infringement is a
sufficient basis for classifying a case as 'exceptional,' and indeed, when a trial court denies
attorney fees in spite of a finding of willful infringement, the court must explain why the case is
not 'exceptional' within the meaning of the statute.").

## V.     PLAINTIFFS HAVE ADEQUATELY PLEADED INDIRECT INFRINGEMENT BY HUGHES

Hughes challenges Plaintiffs' allegations of indirect infringement based mostly on the same argument—that Plaintiffs insufficiently pleaded knowledge of the '073 Patent.  That argument fails for largely the same reasons above regarding willfulness.  Hughes also argues that Plaintiffs inadequately pleaded knowledge of the direct infringement.  But the Complaint details the extensive collaboration between Hughes and its customers, by which Hughes implemented, managed, and supported the infringing activity related to the '073 Patent.  Compl. ¶¶ 15–23, 36–32, 49–50.  The Complaint also includes specific allegations of Hughes' knowledge of its customer's direct infringement of the '874 Patent, and detailed allegations regarding Hughes' active encouragement of that infringement through its similar implementation, management, and support of the infringing conduct.  *Id.* ¶¶ 65–67.  Those allegations support a finding of knowledge, and certainly make it plausible.

"To survive a motion to dismiss, a Complaint must contain sufficient facts plausibly showing that Defendants specifically intended a third party to infringe the patent and knew the third party's acts constituted infringement."  *InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-CV-414-JRG, 2012 WL 3283371, at *3 (E.D. Tex. Aug. 10, 2012) (internal quotation marks and alterations omitted).  Detailed factual support is not needed for every element of indirect infringement.  *Id.* ("While the Complaint does not explicitly plead facts to show that Galaxy had a specific intent to induce infringement, it is not necessary to provide detailed factual support for each and every element of inducement.").  As discussed above, Plaintiffs' Complaint nevertheless contains detailed factual allegations establishing Hughes' knowledge of the infringement by its customers of both the '073 Patent and '874 Patent.  Compl. ¶¶ 15–23, 31–37, 44–45, 65–67.

For pleading purposes, knowledge of infringement is established by factual allegations plausibly showing the identity of the direct infringers, knowledge and encouragement of the infringing acts, the defendant's notice of the asserted patent, and that the accused acts constitute infringement; specific intent is established by factual allegations plausibly showing that the defendant encouraged the infringing acts.  *See Achates Reference Pub., Inc. v. Symantec Corp.*, No. 2:11-CV-294-JRG-RSP, 2013 WL 693955, at *3 (E.D. Tex. Jan. 10, 2013) ("Finally, Symantec has had knowledge of the patent, as well as knowledge that the use of the activation component infringes the asserted patents, since at least the time of the filing of the Complaint."); *see also Neology, Inc.*, 2014 WL 4675316, at *6 ("A plaintiff must also allege facts to allow for the plausible inference that the indirect infringer had the specific intent to induce infringement by the direct infringer (that is, that the indirect infringer *encouraged* the direct infringement)."); *Potter Voice*, 2014 WL 46768, at *4 ("By identifying the direct infringer, the mechanism by which Apple encouraged the infringement, and by stating that Apple intended for infringement to occur, PVT properly states a claim for induced infringement.").  "This does not mean, however, that [a plaintiff] must prove its case at the pleading stage." *In re Bill of Lading*, 681 F.3d at 1339.  The allegations in the Complaint, when considered as a whole, need only support a reasonable and plausible inference that Hughes had the requisite knowledge. *Id.* at 1340 ("[W]hen the allegations in R+L's lengthy and detailed amended complaints are considered as a whole . . . it is clear that the inferences R+L asks to be drawn are both reasonable and plausible.").

Plaintiffs' Complaint includes extensive factual allegations of Hughes' knowledge of its customers' infringement of both the '073 and '874 Patents.  Compl. ¶¶ 15–23, 31–37, 44–45, 65–67.  Per those allegations, Hughes has fully implemented, managed, and supported the

infringing systems for at least five direct infringers.  *Id.* ¶¶ 15–17, 18–22, 28, 31–33, 40, 66.  As described above, moreover, Hughes provided this support with full knowledge of the '073 Patent, and the nature of the technology it covers.[6]  Plaintiffs have alleged direct knowledge of the '874 Patent from the filing of this lawsuit.  *Id.* ¶ 65.  The Court can reasonably infer the requisite knowledge of direct infringement from these allegations. *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-CV-229, 2012 WL 9864381, at *4 (E.D. Tex. July 27, 2012) ("Failing to allege pre-suit knowledge '... is not a basis to dismiss [Plaintiff's] indirect infringement claims; as it cannot be disputed that [Plaintiff] does sufficiently plead that the Moving Defendants had knowledge of the asserted patent for at least some time during the infringing period.'").

Hughes argues that Plaintiffs improperly pleaded specific intent for the '874 Patent despite the allegations that Hughes *actively encouraged* infringement by implementing, managing, and supporting the infringing systems.  Def. Br. at 7–8.  The allegations in the Complaint, which Hughes readily acknowledges, are more than sufficient.  *See Neology, Inc.*, No. CV 13-2052-LPS, 2014 WL 4675316, at *6 ("A plaintiff must also allege facts to allow for the plausible inference that the indirect infringer had the specific intent to induce infringement by the direct infringer (that is, that the indirect infringer *encouraged* the direct infringement)."); *Potter Voice*, No. C 13-1710 CW, 2014 WL 46768, at *4 (same).  Hughes relies on *Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*, No. 6:13CV307 MHS-JDL, 2014 WL 10291478 (E.D. Tex. Feb. 7, 2014) to argue that the allegations of active encouragement do not

---

[6] Because these allegations plausibly show actual knowledge by Hughes of the '073 Patent and the infringing acts, Plaintiffs need not rely on willful blindness, although willful blindness could also plausibly be established by the allegations of Hughes' extensive analysis of the '073 Patent during prosecution of one of its own patents related to similar subject matter.

show that Hughes "directed customer's to infringe."  Def. Br. at 7.  But in *Am. Vehicular*, the patentee was alleged only to have provided "detailed explanations, instructions, and information" "that promote[d] and demonstrate[d]" infringing use.  2014 WL 10291478, at *3.  Here, by contrast, Plaintiffs allege that Hughes did much more than provide documents show an infringing use.  Hughes actively encouraged infringement by "marketing [] infringing systems to customers; working with its customers to implement and install the infringing systems and components thereof; assisting its customers in implementing and installing the infringing systems and components thereof; fully supporting and managing its customers' continued use of the infringing systems; and providing technical assistance to customers during their continued use of the infringing systems."  Compl. ¶ 66.

Because Plaintiffs have alleged facts plausibly showing that Hughes knew of the '073 Patent, the '874 Patent, and its customers' infringement of both, and that Hughes specifically intended that the customer infringe, dismissal of Plaintiffs' indirect infringement claims would be inappropriate.

## VI.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court to deny Defendants' partial motion to dismiss Plaintiffs' claims of willfulness and indirect infringement, and Plaintiffs' prayer for reasonable attorneys' fees and costs under 35 U.S.C. § 285.

Dated:  December 28, 2015                          Respectfully submitted,


                                                    */s/ Kurt G. Calia* by permission Wesley Hill
Kurt G. Calia – LEAD ATTORNEY
Cal. Bar No. 214300
**Covington & Burling LLP**
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
(650) 632-4700
*kcalia@cov.com*

Ranganath Sudarshan
Cal. Bar No. 244984
**Covington & Burling LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
*rsudarshan@cov.com*

Wesley Hill
Tex. Bar No. 24032294
**Ward & Smith Law Firm**
1127 Judson Road, Ste 220
Longview, Texas 75601
(903) 757-6400
*wh@wsfirm.com*

*Attorneys for Plaintiffs*
*Elbit Systems Land and C4I Ltd. and Elbit*
*Systems of America, LLC*

15

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 28th day of December 2015.

<u>*/s/ Kurt G. Calia* by permission Wesley Hill</u>
Kurt G. Calia