**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| ELBIT SYSTEMS LAND AND C4I LTD. and | ) | |
| ELBIT SYSTEMS OF AMERICA, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 2:15-cv-00037-RWS-RSP |
| | ) | |
| HUGHES NETWORK SYSTEMS, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT HUGHES NETWORK SYSTEMS,
LLC'S OBJECTIONS [DKT. 401] TO THE COURT'S ORDER DENYING
<u>DEFENDANTS' MOTION TO SEVER AND TRANSFER CLAIMS</u>**

In its Objections to the Court's Order on Transfer, Hughes accuses Plaintiffs of "infect[ing]" this case with "venue and jurisdictional issues," and takes issue with Judge Payne's conclusion that Hughes failed to properly alert the Court of its pending motion. Dkt. 401 at 1, 3. Hughes is unjustified in its attempt to shift blame to Plaintiffs or Judge Payne. It is Hughes' own: (a) extraordinary and unexplained delay in raising venue issues with the Court; (b) failure to appropriately notify the Court of its pending Motion; and (c) lack of candor regarding its ties to this District, that resulted in its venue challenges being denied. Because none of Hughes' criticisms constitutes clear error, Elbit requests the Court to overrule Hughes' objections.

## I.     BACKGROUND

Plaintiffs filed their original complaint on January 21, 2015. Dkt. 1. Plaintiffs attached evidence of Defendants' extensive ties to this District, including:

- Press releases by Hughes and ESSI Corporation (former Defendant BlueTide's predecessor) describing Hughes' provision of broadband satellite networking products and services (including the accused products in this litigation) to various Texas and Louisiana-based companies operating in the Gulf of Mexico. Dkt. 1-4; 1-5; 1-8; 1-9; 1-10.

- A "Case Study" published by Hughes describing how Hughes "installed [the] Hughes Digital Concierge" and "provided . . . a broadband satellite network for Point-of-Sale and reservation applications" to the Helm Hotels Group at "its Best Western Premier property in Denton, Texas," in this District. Dkt. 1-6.

- An official Hughes "White Paper" describing Hughes' accused cellular backhaul systems, including, *inter alia*, an admission that "Hughes has conducted extensive integration and certification testing with many of the industry-leading IP optimizers including . . . [the] Sevis 6000 series." Dkt. 1-14 at 4. Sevis is based out of Denton County, Texas, within this District.

Hughes' co-defendants (represented by Hughes' counsel) all filed motions to dismiss:

- Helm Hotels Group's motion stated that each hotel in the Helm Hotels Group was owned by a different separately incorporated entity, and suggested that "Country Home Investments . . . is the appropriate party against whom [the complaint] should have been asserted." Dkt. 21 at 2. Accordingly, Plaintiffs amended the complaint to name Country Home. Dkt. 28; 29.

- BlueTide and Black Elk moved to dismiss on grounds of venue, arguing that they did not use the accused products in the District. Dkt. 23; 35; 67. After Plaintiffs pointed out that the

Defendants' annotated map of their oil and gas rigs misleadingly "suggest[ed] that Black Elk's installations are closer to the Southern District of Texas than the Eastern District," Dkt. 31 at 5-6, the Court denied the motion, citing Plaintiffs' corrections to the map and noting that "Defendants misunderstand" the applicable law on venue, Dkt. 102 at 4-5.

Hughes' delay in bringing a transfer motion was significant and as yet unexplained. The parties conferred on the issue on November 24, 2015, Dkt. 130-14, but Hughes did not file until 6 months later, and _16 months_ after Plaintiffs' original complaint.  Dkt. 130. Instead of filing it as a "motion," Hughes filed this motion as a "'sealed document' amongst a busy docket sheet that at the time had over 120 entries." Dkt. 394 at 3.

Aside from a sentence at the end of the Joint Claim Construction and Prehearing Statement, Dkt. 161 at 3, Hughes did not bring its motion to the Court's attention until June 2, 2017, when, on the eve of trial, Hughes filed a second motion to transfer based on *TC Heartland*. Hughes did not raise it during the September 28, 2016 Markman hearing, nor any of the other ***five hearings*** held between May 24, 2016 and June 2, 2017. And when the Court asked "[i]s there anything else that the Court needs to address at this time?" at the end of a January 2017 hearing, Hughes' lead counsel replied that "Defendants have nothing further." Jan. 17, 2017 Hearing Tr. at 66:19-67:1.

Plaintiffs responded in due course to Hughes' section 1406 motion, providing extensive evidence that "Hughes continues to conceal the extent of its substantial and widespread presence in the Eastern District." Dkt. 386 at 2.  Judge Payne denied that motion on June 20, 2017. Dkt. 388 at 42. The Court denied Hughes' original § 1404 motion to transfer a few days later, Dkt. 394 at 42. Hughes now objects to the Court's denial of its May 24, 2016 transfer motion (Dkt. 401).

## II.    ARGUMENT

### A.    The Court correctly found that "[t]here was no excuse for [Hughes] to wait so long to seek transfer."

In attempting to excuse its 16-month delay in seeking transfer, Hughes argues the Court committed clear error in "assign[ing] any relevance to the timing of the Motion using the date the

*Original Complaint* was filed as it contained none of the facts in the *First and Second Amended Complaints* that gave rise to the venue issues." Dkt. 401 at 4. This is misleading. Hughes itself claims the venue issue has been present in this case "from inception," Dkt. 401 at 1, and the amended complaints do not materially alter the § 1404 analysis. The only two changes Hughes points to confirm this. First, Hughes points to "replacing Helm [Hotels Group] with a new defendant," *id.* at 1—but fails to mention this "new defendant" was merely the holding company that owned the Helm Hotels Group property in Plaintiffs' complaint, whom *Defendants* suggested as "the appropriate party," Dkt. 21 at 2. Second, the "entirely new facts about two third-party corporations" Hughes claims were added, Dkt. 401 at 1, were disclosed in a Hughes official White Paper that had already been attached as an exhibit to the original Complaint, Dkt. 1-14 at 4.

In addition to Hughes' knowledge of these facts at the time of the January 2015 filing, these are not "facts allegedly *supporting* transfer" that prevented Hughes from moving earlier.  Hughes cannot plausibly argue the presence of a hotel using the accused products (Country Home) and a manufacturer of components for the accused systems (Sevis) in this District would have *supported* transfer. And Hughes inexplicably delayed filing its transfer motion even *after* the Second Amended Complaint. While the parties conferred on the motion on November 24, 2015, Dkt. 130-14, Hughes chose to not move for transfer for an additional *six months*. Therefore, Judge Payne's finding that "[t]here was no excuse to wait so long to seek transfer," all while protracted litigation was underway, Dkt. 394 at 3, is amply sufficient to uphold the underlying Order denying transfer.[1]

---

[1] Hughes' "point of clarity" that Judge Payne's reference to 18 months "is incorrect" because it sought transfer 16 months after filing, Dkt. 401 at 4 & n.6, mischaracterizes the Court's Order. Judge Payne repeatedly (and correctly) noted "Defendants waited some *16* months after the case was filed to seek transfer." Dkt. 394 at 3; *id.* at 1. The portion of the Court's Order Hughes cites referenced the 18-month delay in the *Peteet v. Dow Chemical Company* decision the Court was discussing, not this case. Dkt. 394 at 2 (citing *Peteet*, 868 F.2d 1428, 1436 (5th Cir. 1989)). Regardless, whether it was 16 or 18 months, Hughes' delay was significant and inexcusable.

**B.      Hughes continually failed to bring its Motion to the Court's attention.**

Hughes also claims it should be credited for "remind[ing]" the Court of the motion in a one-sentence reference at the end of the parties' joint Claim Construction and Prehearing Statement. Dkt. 401 at 3 (citing Dkt. 161 at 3).[2] But Hughes does not dispute that it repeatedly and continually failed to bring its May 2016 motion to the Court's attention in the numerous hearings held since July 2016, including the Claim Construction Hearing itself. For example, when the Court asked Defendants' counsel "[i]s there anything else that the Court needs to address at this time?" at the end of a January 2017 motions hearing, Hughes' lead counsel replied: "Defendants have nothing further." Jan. 17, 2017 Hearing Tr. at 66:19-67:1. Further, there can be no doubt Hughes did nothing "to employ any strategy to pressure the district court to act, such as seeking mandamus to direct the district court to rule on the motion," seeking a hearing on the motion, or any other action that could have sought a ruling from the Court.  *In re Apple Inc.*, 456 F. App'x 907, 908 (Fed. Cir. 2012). Judge Payne's finding regarding Hughes' failure to sufficiently alert the Court of its pending motion is not clearly erroneous.

**C.      The Court did not commit clear error in ruling that Hughes failed to show that the District of Maryland was clearly more convenient than this District.**

First, the legally relevant period for transfer analysis is not based on the facts existing when the motion is filed, Dkt. 401 at 3, or when Hughes is the "only defendant left in the case" weeks before trial,[3] *id.* at 5. "[P]recedent dictates that motions to transfer venue are not decided

---

[2] While Hughes now argues that this terse reference should have alerted the Court to the motion to transfer, Hughes failed to even note that reference in its most recent motion to transfer. *See* Dkt. 372. And Hughes' only cited authority, *Two-Way Media*, reinforces that *Hughes*, not the Court, should have monitored the status of the transfer motion.  *Two-Way Media, LLC v. AT&T Operations, Inc.*, No. 09-CV-00476, Dkt. 633 at 5 (W.D. Tex. Feb. 6, 2014) ("The Court finds that Rule 77(d) imposes on attorneys the responsibility to check into the status of their case").

[3] This is especially true given that Hughes' Motion was premised on severing the other defendants, making Hughes the only defendant relevant for consideration in the transfer analysis.

4

on a series of changing facts, but instead should be evaluated based on the situation which existed when suit was filed."[4] *Vertical Comput. Sys., Inc. v. LG Elecs. Mobilecomm U.S.A., Inc.*, No. 2:10-cv-490-JRG, 2013 WL 2241947, at *3 (E.D. Tex. May 21, 2013) (citing *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013)). Moreover, Hughes' claim that "all material witnesses and evidence reside [in Maryland]," Dkt. 401 at 1, is strikingly inaccurate. *See, e.g.*, Dkt. 143 at 7-13 (detailing numerous witnesses (including third-party) and sources of proof more convenient to this Court than to Maryland); Dkt. 386 at 2, 8-15.[5]

In *In re Oracle Corporation*, the authority Hughes cites to challenge the Court's analysis, the court determined that a private agreement between the parties "rendered [the §1404(a)] analysis unnecessary," 399 F. App'x 587, 589 (Fed. Cir. 2010)—here, the Court performed the analysis, Dkt. 394 at 3-4. And although Hughes repeatedly alleges that the Plaintiffs "manufactured venue," Dkt. 401 at 5, Hughes does not mention the numerous third-party witnesses and sources of proof located in or around the District, Dkt. 143 at 7-13, nor Hughes' own extensive connections and ties within the District (and nearby), Dkt. 386 at 2, 8-15.

There is thus no clear error in Judge Payne's finding that "Defendants have not shown the District of Maryland to be clearly more convenient."  Dkt. 394 at 4.[6]

---

[4] Another reason that Hughes' delay should be considered from the time the *original Complaint* was filed.

[5] Notably, in its Motion, Hughes originally denied having any distribution facilities, inventory, or marketing documents (among other things) in this District.  Dkt. 130 at 8.  Hughes did not bother to correct its misrepresentations about its Texas employees until more than a year later, when Hughes filed a corrected affidavit.  *See* Dkt. 374-1.  And Hughes *never* "clarified" that it in fact maintained showrooms, inventory, and marketing materials in the District.  *See* Dkt. 386 at 15. At a minimum, Hughes' failure to promptly bring the correct facts to the Court's attention demonstrates Hughes paid no attention to the transfer it now claims is so important.

[6] For example, "there is no universe in which transferring venue in this case would further judicial economy."  *Chamberlain Grp. v. Techtronic Indus. Co.*, No. 16-cv-6097, slip op. at 3 (N.D. Ill. June 28, 2017).

Dated: July 12, 2017

Respectfully submitted,

*/s/ Kurt G. Calia w/permission by Andrea L Fair*
Kurt G. Calia – LEAD ATTORNEY
Cal. Bar No. 214300
**Covington & Burling LLP**
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
(650) 632-4700
*kcalia@cov.com*

Ranganath Sudarshan
Cal. Bar No. 244984
**Covington & Burling LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
*rsudarshan@cov.com*

Wesley Hill
Tex. Bar No. 24032294
Andrea Fair
Tex. Bar No. 24078488
**Ward, Smith & Hill PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
(903) 757-6400
*wh@wsfirm.com*
*andrea@wsfirm.com*

*Attorneys for Plaintiffs*
*Elbit Systems Land and C4I Ltd. and Elbit Systems of America, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of the foregoing document via

6

electronic mail and via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 12 of July, 2017.

*/s/ Andrea L. Fair*
Andrea L. Fair